THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| TAMMY MARIE HOSKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | 4:19-cv-0113-AKK |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Tammy Marie Hoskins brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking review of the denial of her application for disability insurance benefits. There is no dispute that Hoskins is currently disabled and unable to work. The issue is whether Hoskins was disabled in 2014, prior to the expiration of her disability-insured status. The court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") decision—which has become the decision of the Commissioner of the Social Security Administration—that Hoskins was not disabled in 2014. The Commissioner's decision is thus due to be affirmed.

### I. Background

In 2017, Hoskins was diagnosed with necrotizing myopathy, a rare autoimmune disease that causes muscle weakness. R. 768. Because of her disease, Hoskins is plainly unable to work. Her husband reports that she is largely bedridden,

1

cannot walk without assistance, and struggles to complete basic tasks like bathing and feeding herself. R. 35, 769. Hoskins' treating physician described her as "quite disabled." R. 773. The consulting physician hired by the Social Security Administration agreed, stating that "there is no question about the seriousness of her medical problem in 2018." R. 41.

The issue is when Hoskins became disabled. To be eligible for benefits, Hoskins must prove that she became disabled prior to the expiration of her disability-insured status. *See* 42 U.S.C. § 416(i)(3); 20 C.F.R. § 404.131. Hoskins' insured status expired on December 31, 2014, so she must prove that she became disabled before the end of 2014. R. 17. In her application for disability insurance benefits, Hoskins claimed a disability onset date of April 2, 2014. R. 52. However, the ALJ determined that Hoskins was not disabled in 2014. R. 17–25. The Appeals Council affirmed, R. 1–3, and Hoskins now seeks review in this court.

## II. Standard of Review

The court reviews the ALJ's factual findings under the substantial evidence standard. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence "is more than a scintilla, but less than a preponderance: it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citation omitted). The court must review the entire record, including the parts unfavorable to the ALJ's decision, to determine whether substantial evidence exists

in support of that decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990). But the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for the ALJ's. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). If supported by substantial evidence, the court must affirm the ALJ's factual findings even if the evidence preponderates against those findings. *Martin*, 894 F.2d at 1529.

In contrast, the court reviews *de novo* whether the ALJ applied the correct legal standard. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In this way, the court's review of the Commissioner's decision is "demarcated by a deferential reconsideration of the findings of fact and an exacting examination of the conclusions of law." *Martin*, 894 F.2d at 1529.

### III. Analysis

Hoskins mainly points to two sets of evidence to prove that she was disabled in 2014. First, her husband testified at the hearing that, although Hoskins was not diagnosed until 2017, she started experiencing symptoms of necrotizing myopathy in 2014. R. 36. He recalled that she could stand for only "30 to 45 minutes" before she "would have to sit down for an hour or more" because of "leg pain and fatigue." R. 36. He added that she "would not be able to repeat the process but maybe once or twice during a day." R. 36. The husband further testified that in 2014 "her daily activity consisted of getting up out of bed, moving to a chair in the living room and

3

watching TV or maybe getting up and going to the bathroom. And going back to bed at night." R. 36.

The second set of evidence is the medical records of Dr. Mohamed Kazamel. Dr. Kazamel started treating Hoskins in July 2017, when he diagnosed her with necrotizing myopathy. R. 768. In his clinic notes, he surmised that Hoskins' "symptoms started in 2014." R. 768; *see also* R. 772 ("I think that this is a case of untreated necrotizing autoimmune myopathy that started in early 2014."). Notably, Dr. Kazamel explained that his observation about the onset date was "per patient and husband." R. 768. Furthermore, in 2018, Dr. Kazamel completed a "Physical Capacities Form" provided by Hoskins' counsel, in which Dr. Kazamel made clear that Hoskins would not be able to perform any work. R. 897. In response to a question on the form of whether "these limitations exist at least back to 4/02/14"—the alleged onset date—Dr. Kazamel marked "Yes." R. 897.

The ALJ determined that the medical record contradicts this evidence. R. 24. The ALJ found evidence of some lower back pain, anxiety, and a history of depression that was "well controlled on medication." R. 19–20. The ALJ did not find evidence in the medical record that Hoskins experienced symptoms of her necrotizing myopathy in 2014. R. 24. Without the necrotizing myopathy, the ALJ had little trouble concluding that Hoskins' back pain, anxiety, and depression did

4

not render her disabled in 2014. R. 20–25. Substantial evidence supports the ALJ's decision.

## A.

There is no contemporaneous evidence that Hoskins suffered from muscle weakness in 2014. The only medical records from around that time are three annual exams she attended in March 2013, August 2014, and October 2015, during which Hoskins sometimes complained about her stress or anxiety. R. 345, 950, 408. But at each exam, Hoskins specifically denied that she was experiencing any fatigue or joint pain. R. 345, 950, 408. And at each exam, the doctor recorded that Hoskins "has had no significant changes in her general health history." R. 346, 951, 409. Hoskins' husband testified that in 2014 she could not stand for longer than 45 minutes due to fatigue. R. 36. These records establish that not only did Hoskins fail to report such symptoms to her doctors, she explicitly denied them.

Moreover, when Hoskins did go to the hospital complaining of muscle weakness in late 2016 and early 2017, she told the doctors that her symptoms had started recently. For example, in November 2016, Hoskins went to a clinic and told the doctor that a fall about two weeks earlier caused her to experience ongoing pain and swelling in her left leg. R. 385. In March 2017, she told a doctor that she first started feeling fatigue about a year before, and that it had progressively gotten worse. R. 675. She also told the doctor that she had fallen five or six times over the previous

5

six months. R. 675. Other doctors she saw in March 2017 recorded variously that Hoskins had been experiencing weakness over the last several weeks or months. R. 413, 433. None of these doctors reported that Hoskins' symptoms began as far back as 2014. In short, the medical evidence supports the ALJ's decision.

**B.**

To get around the medical record, Hoskins argues that the ALJ did not give proper weight to Dr. Kazamel's opinion that her symptoms began in 2014. As an initial matter, the rules for evaluating medical opinions in social security cases have changed. Previously, the rules placed great emphasis on whether the medical opinion came from a "treating source," and the rules often directed ALJs to give "controlling weight" to a treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2). The rules now clarify that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." § 404.1520c(a). Instead, all medical opinions are evaluated according to the factors listed in § 404.1520c(c), of which the most important are the supportability and consistency of the medical opinion. *Id.* Supportability refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. § 404.1520c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinion presented.

§ 404.1520c(c)(2). The other factors, which the ALJ is not required to consider, § 404.1520c(b)(2), concern the medical source's relationship with the claimant, § 404.1520c(c)(3), the medical source's specialization, § 404.1520c(c)(4), and any "other factors that tend to support or contradict a medical opinion," § 404.1520c(c)(5).

In this case, the ALJ decided that Dr. Kazamel's opinion about the onset date is not consistent with the record. The ALJ explained:

> [I]n July 2017, the claimant and her husband reported to doctors at UAB Hospital that the claimant's symptoms began in 2014 with lower extremity weakness. However, records obtained from 2014 document the claimant to be well developed, well nourished, and that she specifically denied fatigue, joint pain, or other significant musculoskeletal abnormalities.

R. 24.

Dr. Kazamel's opinion about the onset date also is not well supported. The only reason Dr. Kazamel gave for tracing the muscle weakness to 2014 was that Hoskins told him the symptoms started in 2014. *See* R. 768. But a few weeks earlier, before Hoskins applied for disability benefits, Hoskins told other doctors that her muscle weakness started in 2016. R. 675, 413, 433. The ALJ was justified in not crediting an opinion that was based entirely on a claimant's self-interested report. *See Pettaway v. Astrue*, 376 F. App'x 889, 891 (11th Cir. 2010) (discounting a treating physician's opinion because it "went against the balance of objective medical evidence and was based mainly on [the claimant's] subjective complaints.").

7

Moreover, Dr. Kazamel did not treat Hoskins in 2014, which makes his opinion about her condition in 2014 less persuasive.[1]

## C.

The rest of Hoskins' contentions are also unavailing. For example, Hoskins argues that the ALJ should not have rejected Dr. Kazamel's opinion for being obtained by counsel. The ALJ did in fact note that Dr. Kazamel completed the Physical Capacities Form "at the request of the claimant's attorney." R. 24. However, Hoskins overlooks that the ALJ gave a different reason for not crediting the onset date on the form: "The doctor's opinion is not consistent with the medical records and reports in existence in 2014, or prior thereto." R. 24. Next, Hoskins contends that the ALJ should have sought another physician's opinion before rejecting Dr. Kazamel's. The ALJ did just that. She obtained the consulting opinion of Dr. Alexandre Todorov. R. 39. Dr. Todorov testified that there was no evidence that necrotizing myopathy began in 2014. R. 41–42.

Finally, Hoskins' other arguments about the ALJ's residual functional capacity assessment and the vocational grids are ultimately derivative of her

---

[1] *See Law v. Colvin*, 681 F. App'x 828, 833–34 (11th Cir. 2017) ("[The claimant's] date last insured was December 31, 2012. She first visited Dr. Walcott eighteen months later in the summer of 2014. Dr. Walcott's treatment of [the claimant] in 2014 does not establish whether she was disabled as of December 31, 2012."); *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) ("When the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence."); *see also* § 404.1520c(c)(3)(i).

arguments about the onset date. Because the court finds that substantial supports the

ALJ's decision about the onset date, these arguments also fail.

## IV.  Conclusion

The court concludes that substantial evidence supports the ALJ's judgment, and the Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum will be entered.

**DONE** the 12th day of March, 2020.

*[signature]*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE